# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| IN THE MATTER OF A PETITION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 BY<br><br>MACQUARIE BANK LIMITED,<br><br>Petitioner. | Case No. 2:14-cv-00797-GMN-NJK<br><br>ORDER DENYING MOTION TO COMPEL<br><br>(Docket No. 14) |

Pending before the Court is a motion to compel filed by Petitioner Macquarie Bank Limited ("Petitioner" or "Macquarie"). Docket No. 14. Respondent Sherman Ching Ma ("Respondent" or "Mr. Ma") filed a response in opposition, and Petitioner filed a reply. Docket Nos. 21, 24. Petitioner also filed a supplement, which the Court has considered. *See* Docket Nos. 30, 32. The motion came on for hearing on February 27, 2015. Docket No. 33; *see also* Docket No. 34 (hearing transcript). For the reasons discussed more fully below, the motion to compel is hereby **DENIED** and the subpoenas at issue are hereby **QUASHED**.

**I.   BACKGROUND**

The matter before the Court involves a long-running legal dispute primarily fought far from Nevada. Petitioner is an Australian company. *See, e.g.*, Docket No. 21-1 at 8. Petitioner lent approximately $11,000,000 to Juno Holdings N.V. ("Juno"), which at the time was a Netherlands Antilles company but later became a Luxembourg company. First Rumora-Scheltema Decl. at ¶¶ 4, 7 (Docket No. 1 at 15). The loan was made in connection with the possible initial public offering of shares

in Juno's indirect subsidiary, Liberty Financial Pty Ltd. ("Liberty Financial"), an Australian company. *Id.* at ¶ 4. When the relationship between Petitioner and Juno soured, Petitioner attempted without success to demand payment on the note in 2007. *Id.* at ¶ 8. When that failed, Petitioner sued Juno in the Netherlands Antilles and obtained a judgment in 2010. *Id.*

In an effort to collect on that judgment, Petitioner obtained an attachment of Juno's shares in another subsidiary, Jupiter Holdings B.V. ("Jupiter"), a Dutch company. *Id.* at ¶ 9. Petitioner obtained that attachment based on its belief that Jupiter owned shares in Minerva Financial Group Pty Ltd. ("Minerva"), an Australian company, and Minerva in turn owned Liberty. *Id.*

Petitioner then filed a petition with the District Court of Amsterdam to execute on the attachment. *Id.* at ¶ 10 ("Juno Proceeding"). That petition sought an order to sell and transfer Juno's shares in Jupiter. *Id.* The District Court of Amsterdam granted that petition, and Juno's appeal was ultimately rejected by the Supreme Court of the Netherlands in 2013. *Id.* at ¶¶ 10-11.[1]

Respondent and Cooperative Minerva and Artemis Holdings U.A. ("Cooperative Minerva") themselves then attached Juno's shares in Jupiter on the basis of a notarial deed, which constitutes an executory title for enforcement under Dutch law. *Id.* at ¶ 13. Shortly thereafter, Respondent and Cooperative Minerva filed their own petitions in the District Court of Amsterdam claiming to be Juno creditors. *Id.* at ¶ 14 ("Juno-Ma Proceeding" and "Cooperative Minerva Proceeding"). Those actions are currently stayed. *See* Decker Decl. at ¶ 6 (Docket No. 21-1).

In addition to the above, Petitioner represents that it is contemplating initiating another action in the District Court of Amsterdam against Respondent for claims akin to fraudulent transfer action. *See, e.g.*, Docket No. 14 at 6; Hearing Tr. at 48 (the "contemplated proceeding").[2]

The legal dispute found its way to this District in light of 28 U.S.C. § 1782, which provides a mechanism for parties in foreign proceedings to seek discovery through petition in federal district court

---

[1] Around this time, Petitioner learned that Jupiter transferred its ownership of Minerva (and hence its ownership of Liberty) to another entity, Vesta Funding B.V. ("Vesta Funding"). *See* First Rumora-Scheltema Decl. at ¶ 12.

[2] Petitioner has been contemplating this action for at least a year. *See, e.g.*, Docket No. 1 at 2 (referring to this potential action in court filing of May 20, 2014).

for use in the foreign proceedings. This action seeks discovery in the form of document production and deposition from Mr. Ma, as Petitioner asserts that he is the director of Juno, Jupiter, Minerva, Liberty, Vesta Funding, and Hestia, and that he directs or controls their activities. *See, e.g.*, First Rumora-Scheltema Decl. at ¶¶ 5, 17. On May 20, 2014, Petitioner filed its initial request to be allowed to conduct discovery on Respondent. Docket No. 1. On May 30, 2014, pursuant to Court order, Petitioner supplemented that petition with additional factual information and legal argument. Docket No. 6. On June 4, 2014, the Court granted the petition. *See In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, 2014 WL 7706908 (D. Nev. June 4, 2014) (*Macquarie I*). As is customary, the § 1782 petition was presented for the Court's consideration on an *ex parte* basis. *See id.* at *1. In light of the *ex parte* nature of the request, the Court expressly provided Respondent the ability to challenge the allowed discovery once it had been issued. *See id*.

On September 11, 2014, Petitioner served Respondent with the subpoenas the Court had authorized. *See* Docket No. 14-5. Respondent did not provide the subpoenaed discovery and, instead, now challenges the subpoenas by opposing the pending motion to compel. *See, e.g.*, Docket No. 21 at 3 ("The order allowing the subpoenas should be vacated . . .").

## II.  MAGISTRATE JUDGE AUTHORITY

The pending motion has been referred to the undersigned magistrate judge. Before turning to the merits of the pending motion, the Court evaluates its authority to decide the matter. The authority of the undersigned magistrate judge is derived from 28 U.S.C. § 636, which generally provides magistrate judges with the authority to "hear and determine" non-dispositive matters. *See* 28 U.S.C. § 636(b)(1)(A); *see also S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1259 (9th Cir. 2013). By contrast, dispositive matters are sometimes referred to magistrate judges, but in those circumstances a magistrate judge submits a recommendation to the assigned district judge that is subject to the district judge's *de novo* review. *See* 28 U.S.C. § 636(b)(1)(B); *see also CMKM Diamonds*, 729 F.3d at 1259-60. Section 636 specifically enumerates eight different types of motions to be treated as "dispositive." *See* 28 U.S.C. § 636(b)(1)(A)-(B). When a motion falls outside of those expressly enumerated as dispositive, courts look to the nature and effect of the pending motion to determine whether it is dispositive. *E.g.*, *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir. 1990) (finding motion

for Rule 11 sanctions to be non-dispositive because it would not "have an effect similar to those motions considered dispositive").[3]

Courts are split on whether motions regarding discovery under § 1782 are dispositive matters requiring the issuance of a report and recommendation. *See In re Application of Chevron Corporation*, 2010 WL 3584520, *3 (S.D. Cal. Sept. 10, 2010). Nonetheless, most courts have found that ruling on a § 1782 motion is a non-dispositive matter within the province of a magistrate judge's authority under § 636(b)(1)(A). *See, e.g.*, *Interbrew Central European Holding BV v. Molson Coors Brewing Co.*, 2013 WL 5567504, *1 (D. Colo. Oct. 9, 2013); *Chevron Corp. v. Camp*, 2010 WL 3418394, *3 (W.D.N.C. Aug. 30, 2010); *In re Chevron Corp.*, 2010 WL 8767265, *2 (N.D. Ga. Mar. 2, 2010); *Weber v. Finker*, 2008 WL 2157034, *1 (M.D. Fla. May 20, 2008), *aff'd on other grounds*, 554 F.3d 1379 (11th Cir. 2009); *In re Oxus Gold PLC*, 2007 WL 1037387, *2 (D.N.J. Apr. 2, 2007); *In re Duizendstraal*, 1997 WL 195443, *1 (N.D. Tex. 1997); *see also In re O'Keeffe*, 2015 WL 1308546 (D. Nev. Mar. 24, 2015) (Hoffman, J.) (resolving a § 1782 discovery dispute by issuing an order rather than a report and recommendation). This Court agrees that the pending dispute falls within the gambit of non-dispositive matters properly determined by a magistrate judge.

At bottom, the pending motion is a discovery dispute and magistrate judges are frequently tasked with resolving discovery disputes. *See, e.g.*, *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 448 (C.D. Cal. 2007). The pending motion is procedural in nature and does not address substantive issues. *Duizendstraal*, 1997 WL 195443, at *1. The Court's disposition of the pending motion does not dispose of any claim or defense in the underlying actions. *See id*. While the Court's ruling may terminate this miscellaneous action, it does so only because of the procedural posture inherent in § 1782 actions and does not render the resolution dispositive in nature. *Id.*; *see also Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, *2 (D. Nev. Aug. 15, 2014) (citing *Feist v. RCN Corp.*, 2012 WL 4835038, *1 (N.D. Cal. Oct. 4, 2012)) (the fact that a discovery order may terminate a miscellaneous action does not render it "dispositive" for § 636 purposes).

---

[3] The Federal Rules of Civil Procedure similarly differentiate between non-dispositive and dispositive matters handled by magistrate judges. *See* Fed. R. Civ. P. 72.

Accordingly, the undersigned has the authority to resolve the pending motion.

## III.     STANDARDS

A court is authorized to allow discovery pursuant to § 1782 once the enumerated statutory requirements have been satisfied. *See, e.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004). Even where those statutory requirements have been satisfied, however, the Court is not required to grant the § 1782 petition. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Instead, it analyzes several discretionary factors to determine whether the discovery sought should be allowed. *See id.* at 264-65.

Section 1782 provides in relevant part that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Pursuant to this statutory language, courts are authorized to permit discovery pursuant to § 1782 application where: (1) the person from whom discovery is sought resides or is found in this District; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person. *See Pott v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1199 (W.D. Wash. 2013).

If the Court has determined that it has the statutory authority to grant the request, then it turns to whether it should exercise its discretion to do so. *Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 109, 112, (D.D.C. 2011). "Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782." *Four Pillars Enterps. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). The Supreme Court outlined the discretionary factors that district courts should consider when ruling on a § 1782 application:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid;

>    (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance;
>
>    (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
>    (4) whether the subpoena contains unduly intrusive or burdensome requests.

*See, e.g.*, *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011). The foreign location of documents sought may be considered as part of the discretionary analysis. *See Four Pillars*, 308 F.3d at 1079-80; *see also Astronics Advanced Elec. Sys. Corp. v. Lufthansa Technik AG*, 561 Fed. App'x 605 (9th Cir. Mar. 7, 2014).[4]  "The court may also consider whether the section 1782 request is a fishing expedition or a vehicle for harassment." *Matter of Action and Protection Foundation*, 2015 WL 1906984, *6 (N.D. Cal. Apr. 27, 2015) (internal quotations and citations omitted).

These discretionary factors "involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives." *In Matter of Application of Action & Protection Foundation Daniel Bodnar*, 2014 WL 2795832, *5 (N.D. Cal. 2014). Courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *See, e.g.*, *Pott*, 945 F. Supp. 2d at 1199 (quoting *Schmitz*, 376 F.3d at 84).

As noted above, this Court has already granted Petitioner's *ex parte* request for the issuance of subpoenas pursuant to § 1782. *Macquarie I*, 2014 WL 7706908. In light of the *ex parte* nature of the request, the Court expressly provided Respondent the ability to challenge the allowed discovery. *See*

---

[4] There is uncertainty as to whether the scope of § 1782 is always limited to domestic discovery. *See Four Pillars*, 308 F.3d at 1079-80. The Court will, however, assess the location of the documents as a discretionary factor because the Ninth Circuit has made clear that doing so is proper. *See id.* In light of the Court's resolution of the pending motion, the Court need not opine on whether § 1782 is always limited to domestic discovery.

*id.* As the party resisting discovery, Respondent bears the burden of persuasion of demonstrating that discovery should not be allowed. *See IPCom GmbH & Co. KG v. Apple Inc.*, ___ F. Supp. 3d ___, 2014 WL 3728576, *2 (N.D. Cal. July 28, 2014) (collecting cases); *see also O'Keeffe*, 2015 WL 1308546, at *2 ("If a district court grants a § 1782 application, the subpoenaed party can move to quash the subpoena, but bears the burden of persuasion in the course of civil litigation").

## IV. ANALYSIS

In light of the analytical framework outlined above, the Court first assesses whether the statutory requirements are met to allow the § 1782 discovery and, if so, then turns to the discretionary factors.

### A. STATUTORY REQUIREMENTS

As discussed above, § 1782 includes several statutory requirements, including that: (1) the person from whom discovery is sought resides or is found in this District; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person. These requirements are met in this case. Respondent has conceded that he resided in this District at the time the subpoenas were served and that this Court may properly exercise jurisdiction over him, so the first statutory requirement is met. *See* Hearing Tr. at 33.[5] Respondent also does not challenge that Petitioner (a party to the foreign proceedings) is a proper party to bring the application for discovery, and the Court finds that the third statutory requirement is met. *See Macquarie I*, 2014 WL 7706908, at *2.

The parties' briefing argued extensively about whether the discovery sought is "for use" in a foreign proceeding. Since the time of the briefing, however, the bailiff appointed to oversee the sale of Jupiter shares in the Juno Proceeding has confirmed that he is receptive to receiving any relevant information obtained through this proceeding. *See* Docket No. 30-1 at 4 ("I confirm that because of the court decision in the Netherlands and my proceedings out of that, I would like to receive any relevant information obtained in the US proceedings"). In light of this communication, the Court finds that the discovery sought is "for use" in a foreign proceeding, so the second statutory requirement is met.

//

---

[5] Respondent has since relocated to California. *See id.*

B.   DISCRETIONARY FACTORS

Having determined that the Court has the authority to require Mr. Ma to provide discovery pursuant to § 1782, the Court turns to whether it should exercise its discretion to order him to do so. As discussed above, the Court exercises its discretion by analyzing: (1) whether the material sought is within the foreign tribunal's jurisdictional reach; (2) the nature of the foreign tribunal, the character of the proceedings, and the receptivity to this Court's assistance; (3) whether the party seeking discovery here is attempting to circumvent foreign proof-gathering restrictions; and (4) whether the subpoena contains unduly intrusive or burdensome requests. In addition, the Court may also consider whether some or all of the documents are located abroad. The Court addresses each factor below.

1.   Whether the Material is Within the Foreign Tribunal's Jurisdictional Reach

The first discretionary factor looks to whether the "person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. The Supreme Court explained that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* (citations omitted). On the other hand, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Id.* (citation omitted). Although the case law at times refers to whether the "person" is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceeding. *In re Application of Ooo Promnefstroy*, 2009 WL 3335608, *5 (S.D.N.Y. Oct. 15, 2009) ("it is the foreign tribunal's ability to control the evidence and other production, not the nominal target of the § 1782 application, on which the district court should focus"); *see also In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is available to the foreign tribunal"); *In re Ex Parte LG Electronics Deutschland GmbH*, 2012 WL 1836283, *2 (S.D. Cal. May 21, 2012) (finding this factor weighed against allowing § 1782 discovery even though subpoena was directed to a non-party to the foreign proceeding because the information sought could be obtained from a party to the foreign proceeding). This factor militates against allowing § 1782 discovery when

8

the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity. *See Schmitz*, 376 F.3d at 85 ("Although technically the respondent in the district was [the foreign counter-party's law firm], for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation"); *see also In re Kreke Immobilien KG*, 2013 WL 5966916, *5 (S.D.N.Y. Nov. 8, 2013) (denying discovery sought from parent company under § 1782 when subsidiary company was participant in foreign proceeding because, *inter alia*, "the notion that [the parent company] could somehow be a nonparticipant in the foreign action is untenable").

Mr. Ma asserts repeatedly that the documents at issue can be obtained by the bailiff directly from Juno in the Juno Proceeding: "There is no need for the District Court of Amsterdam to request records from Mr. Ma when it can request all records he might possess and more directly from Juno. All of the material sought is within the jurisdiction of the District Court of Amsterdam." Docket No. 21 at 15; *see also* Deckers Decl. at ¶ 8. The bailiff has been tasked with collecting the information necessary to complete the sale of the Jupiter shares. *See* Docket No. 14-2 at 7. Petitioner acknowledges that the Dutch court has "ordered Jupiter to provide the bailiff with any information the bailiff requests in order to establish the value of the shares and facilitate the sale." Docket No. 14 at 7.[6] Petitioner also acknowledges that "some of the information Macquarie seeks here, for example documents concerning the assets and liability of Juno and Jupiter . . . is similar to the information the bailiff was ordered to seek." *See id*. Nonetheless, Petitioner worries that there is "no guarantee" that the bailiff will be successful in obtaining the information he requests. *Id.*

Respondent has the better argument. Juno is a party to the on-going Dutch proceedings and its documents are within the jurisdictional reach of the District Court of Amsterdam. Respondent here has indicated that Juno is cooperating with the bailiff's request for information in those proceedings. *See* Ma Decl. ¶ 6. Moreover, Petitioner acknowledges that there is an overlap of the discovery sought here

---

[6] When this issue was presented in Petitioner's *ex parte* application, Petitioner argued that it was unlikely that the Dutch courts would order the discovery sought in this proceeding. *See Macquarie I*, 2014 WL 7706908, at *3. Since that time, however, the District Court of Amsterdam expressly tasked the bailiff with obtaining information that is similar to what is sought here. *See* Docket No. 14-2 at 7.

with the discovery the bailiff has been ordered to obtain. *See* Docket No. 14 at 7. While Petitioner worries that Juno may not comply with its discovery obligations in those proceedings, it has failed to support that concern with concrete evidence.[7] Equally important, Petitioner fails to explain why that concern is properly addressed to this Court rather than to the District Court of Amsterdam or the bailiff overseeing the collection of information in that case. One of the primary objections of § 1782 is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful <u>but, for reasons having no bearing on international comity, they cannot obtain under their own laws</u>." *See Intel*, 542 U.S. at 262 (emphasis added); *see also In re Dubey*, 949 F. Supp. 2d 990, 996 n.4 (C.D. Cal. 2013). That is simply not the situation presented here.[8]

Accordingly, this factor militates squarely against allowing the discovery sought here.

        2.        <u>The Nature of the Foreign Tribunal, the Character of the Proceedings, and the Receptivity to this Court's Assistance</u>

The second discretionary factor focuses on whether the foreign tribunal is willing to consider the information sought. *See Siemens A.G. v. Western Digital Corp.*, 2013 WL 5947973, *3 (C.D. Cal. Nov. 4, 2013) (citing *Schmitz*, 376 F.3d at 884). "[I]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved." *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008). Historically speaking, courts in the Netherlands have been receptive to United States judicial assistance. *See Macquarie I*, 2014 WL 7706908, at *3; *see also Duizendstraal*, 1997 WL 195443, at *2.

As noted above, the District Court of Amsterdam has appointed a bailiff in the Juno Proceeding to collect relevant information as necessary to conduct the sale of Juno's shares in Jupiter. Docket No.

---

[7] Petitioner submitted a declaration that Juno said it would provide information "quickly," but had not done so as of the date of that declaration. Third Rumora-Scheltema Decl. at ¶14.

[8] The parties' briefing focuses on the Juno Proceeding. To the extent that the discovery at issue goes beyond that which is sought by the bailiff, the Court notes that Mr. Ma is a party to one of the stayed actions and would be a party to the contemplated action if initiated. Petitioner also acknowledges that the appointed bailiff may investigate the transaction underlying its contemplated action. *See* Docket No. 14 at 9.

14-2 at 7. The bailiff appears to have been equivocal previously in his receptivity to this Court's assistance.[9] The bailiff has recently indicated, however, that he will receive relevant information that Petitioner obtains through this proceeding. Docket No. 30-1 at 4. Respondent counters that there is no indication that the bailiff is lacking in information or that he desired Respondent to obtain information through this proceeding; he has merely indicated that he will receive such material. *See, e.g.*, Hearing Tr. at 23. Moreover, the bailiff has only indicated he is receptive to receiving relevant information, while Petitioner makes clear that it seeks discovery beyond "that which the bailiff may deem relevant." *See, e.g.*, Docket No. 14 at 7-8.

Accordingly, based on the current record, the Court finds this factor weighs to be neutral.

### 3. Circumvention of Proof-Gathering Restrictions or other Policies

The next discretionary factor focuses on whether "the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country of the United States." *Intel*, 542 U.S. at 265. "A perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in the court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Application of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107-08 (D.D.C. 2010)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Application of Gilead Pharmasset LLC*, 2015 WL 1903957, *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA,* 2012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012)).

Respondent argues strenuously that Petitioner seeks discovery from this Court as a means of circumventing the restrictions in the District Court of Amsterdam. In particular, Respondent notes that

---

[9] Prior to receiving the email from the bailiff discussed herein, the parties provided strikingly different accounts of the bailiff's views on this proceeding. *Compare* Deckers Decl. at ¶ 7 (recounting November 18, 2014, meeting with the bailiff in which he indicated that "the proceeding in the United States was not going to affect his actions, that he will proceed with the sales process and will act independently of any proceeding in the United States") *with* Third Rumora-Scheltema Decl. at ¶ 13 (Docket No. 24-1) (asserting that the bailiff did not indicate at the November 18, 2014, that he would not accept any information from this proceeding, and subsequently told Petitioner's counsel that he would "welcome" information obtained in this proceeding).

11

Petitioner sought discovery from the District Court of Amsterdam, and that its request was denied. *See* Docket No. 21 at 17. Respondent also notes that this Court granted Petitioner's *ex parte* application to serve the subpoenas on Mr. Ma on June 4, 2014, but that Petitioner waited over three months to serve those subpoenas on the same day that District Court of Amsterdam denied its request for discovery and ordered that the bailiff would be appointed. *See id.* at 18; *see also* Docket No. 14-2. Respondent also argues that allowing discovery as to the Juno-Ma Proceeding or Cooperative Minerva Proceeding would circumvent the stays entered in those cases. *See* Docket No. 21 at 17-18.

Petitioner argues that the District Court of Amsterdam only denied its discovery request as moot given the bailiff's directive to collect information himself. *See id.* at 5. Petitioner also notes, without elaboration, that it had been unable to locate Mr. Ma to serve him with the subpoenas until September 11, 2014, despite its diligent efforts. *See* Docket No. 14 at 2. Lastly, Petitioner argues that the bailiff has now indicated that he is willing to receive any relevant documents obtained through this proceeding. *See* Docket No. 30-1 at 4.

The fact that Petitioner waited to serve the subpoenas until the day its request for discovery was denied by the District Court of Amsterdam certainly gives the impression that Petitioner was attempting to side-step the District Court of Amsterdam's ruling. While the Court agrees with Petitioner that its request was essentially denied as moot, it is equally clear that the District Court of Amsterdam's order envisioned the information being given directly to the bailiff at his request rather than being collected by Petitioner. In particular, the District Court of Amsterdam held that Petitioner's request to obtain the discovery was denied because "[t]he information must be provided to the bailiff, and the request will therefore be settled in another manner." Docket No. 14-2 at 7. Rather than allow for that process to unfold through the bailiff, however, Petitioner immediately served the subpoenas to obtain the discovery itself from Respondent through this proceeding. Moreover, Petitioner has not meaningfully responded to Respondent's argument that the discovery sought circumvents the stays in place in the Juno-Ma Proceeding or Cooperative Minerva Proceeding. The Court finds that it does.

At the same time, however, while the bailiff appears to have been equivocal previously in his desire to receive discovery obtained through this proceeding, he has now indicated that he will receive any "relevant" information that Petitioner gathers through this proceeding. Docket No. 30-1 at 4.

In short, it appears that the subpoenas were served in response to the District Court of Amsterdam's denial of Petitioner's request for discovery and order that the bailiff would be tasked with collecting discovery from Juno. Nonetheless, the bailiff has more recently indicated that he will receive relevant information obtained by Petitioner through this proceeding. Petitioner has also failed to adequately explain how the request for discovery related to the Juno-Ma Proceeding or Cooperative Minerva Proceeding does not circumvent the stays entered in those cases. Accordingly, based on the record before it, this factor militates slightly against allowing the discovery sought here.

### 4. Burden on Respondent

The next discretionary factor focuses on the burden on the person responding to the discovery request. The Supreme Court has made clear that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. "Recent cases suggest that courts should be more inclined to grant applications that seek either a single document or only those documents relating to a particular event." *Kreke Immobilien*, 2013 WL 5966916, at *7 (collecting cases).[10] When the information sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome. *See In re Fischer Advanced Composite Components AG*, 2008 WL 5210839, *3-5 (W.D. Wash. Dec. 11, 2008) (exercising discretion not to allow discovery because the discovery was unduly burdensome in that it was available from subsidiary company as a party to the foreign proceeding); *see also In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (when the discovery is "equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative"). When a party chooses to serve overly broad discovery, it runs the risk that the discovery will be denied outright without an opportunity to narrow it. *See, e.g., CRT*

---

[10] When this matter was before the Court on Petitioner's *ex parte* application, the Court found only that "Petitioner had made a *prima facie* showing that the information sought has some relevance to the Dutch litigation" and expressly provided that Respondent could challenge the scope of the subpoenas after they were served. *See Macquarie I*, 2014 WL 7706908, *4. Such an order "in no way blesses the scope of the subpoenas." *In re Bayer Healthcare LLC*, 2014 WL 3805807, *2 (N.D. Cal. May 14, 2014).

*Antitrust Litig.*, 2013 WL 183944, at *4 (dismissing argument that over-broad § 1782 request had to be trimmed rather than rejected outright).

Petitioner argues that its "requests are limited to discrete transactions." *See* Docket No. 14 at 4. The Court disagrees. While the subpoenas in some respects are directed to specific transactions, they also include broad and virtually all-encompassing categories of information. For example, the subpoena for documents seeks copies of "[a]ll [d]ocuments concerning the assets and liabilities" of six different corporate entities. *See* Docket No. 14-3 at 11-12.[11] Adding to the significant breadth of the requests, the subpoena covers a time-period of more than a decade and requires not only that business files and email accounts be searched for responsive documents, but also that personal email accounts and social media accounts be searched. *See id.* at 8-9. As noted below, the subpoena also contains no geographical limitation as to the location of the documents and Petitioner has urged this Court to issue an order requiring the production of documents regardless of location. *See* Docket No. 14 at 9-12. Moreover, Respondent acknowledges that the information sought here is in some respects duplicative of the information sought by the bailiff in the District Court of Amsterdam directly from Juno. *See* Docket No. 14 at 7.

The subpoena for Mr. Ma's deposition is similarly expansive. The deposition topics mirror the categories of documents sought. As such, Petitioner seeks to depose Mr. Ma regarding, *inter alia*, the "assets and liabilities" of the six entities. *See* Docket No. 14-4 at 8-9. The subpoena again sets the relevant time range at more than a decade. *See id.* at 8.

Respondent filed a declaration indicating that producing the requested documents and preparing for such a deposition would require extensive travel, document review and preparation time. Ma Decl. ¶ 7. The Court agrees that the scope of discovery sought is overbroad and unduly burdensome, especially given that the material appears to be in significant part within the jurisdictional reach of the District Court of Amsterdam.

---

[11] Petitioner contends that such a request is not as broad as it appears, since the entities involved are primarily holding companies. *See* Hearing Tr. at 42. While some of the entities are holding companies, Liberty Financial is not. That entity was established in 1997, has had over 140,000 customers, and has advanced over $12 billion in funds. *See* Ma Decl. ¶ 2.

1    Accordingly, this factor militates against allowing the discovery sought here.

2        5.    Location of the Documents

3    Mr. Ma next argues that Petitioner impermissibly seeks documents and information located outside of the United States. The legislative history to § 1782 indicates that it was intended to aid in "obtaining oral and documentary evidence in the United States" and some of its drafters have expressed policy concerns with applying it more broadly, which together have given courts "reason to think that Congress intended to reach only evidence located within the United States." *See Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997); *see also Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 665 (9th Cir. 2002) (describing § 1782 as permitting "domestic discovery" for use in foreign proceedings). To that end, courts are reluctant to turn American federal courts into "clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world." *In re Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007); *see also Four Pillars*, 308 F.3d at 1080 (finding magistrate judge did not err in denying discovery of materials in China since "Chinese courts are well situated to determine whether such material is subject to discovery, and in what manner").

As a threshold matter, it is clear that at least *some* responsive documents are located in the United States. *See* Mills Decl. at ¶ 15 (Docket No. 14-1); *see also* Hearing Tr. at 21. Nonetheless, it appears that a significant portion of the documents sought are not located in the United States. Mr. Ma has submitted a declaration that, with respect to Juno specifically, he is not the custodian of records, the documents he has in the United States relate primarily to the ongoing litigation and those documents are either privileged or likely already in Petitioner's possession. *See* Ma Decl. at ¶ 6.[12] Mr. Ma also states that he does not have any of Juno's management accounts or records in the United States. *See id.*

---

[12] Respondent asserts at times that he does not maintain "official" or "original" documents in the United States related to Juno. Ma Decl. at ¶ 6. At the hearing, his counsel asserted that the subpoena sought original or official copies. *See* Hearing Tr. at 21. Petitioner disputes that characterization. *See, e.g.*, Docket No. 24 at 7 ("Macquarie's subpoena is not limited to 'original' or 'official' documents"). The Court has failed to locate any such limitation to "official" or "original" documents.

With respect to the other entities at issue, the record is less well-developed. As noted above, however, none of the entities are American companies. Liberty Financial, the only relevant entity that is not a holding company, is an Australian company that provides financial services in Australia and New Zealand. *See* Ma Decl. at ¶ 2. It can be presumed that the bulk of the discovery material related to this corporate entity is located at its headquarters. *See, e.g.*, *MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 669 (S.D. Miss. 2013) (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)); *see also Net Navigation Sys., LLC v. Extreme Networks, Inc.*, 2014 WL 5465449, *3 (E.D. Tex. Oct. 27, 2014). In that vein, Respondent's counsel repeatedly urged that requests for discovery regarding Liberty Financial should be directed to Liberty Financial in Australia. Hearing Tr. at 32-33.

As the record stands, it appears that a significant amount of the documents sought are not located in the United States. Accordingly, this factor militates against allowing the discovery sought here.

## V. CONCLUSION

The Court is sympathetic to Petitioner's concerns that Mr. Ma has engaged in conduct designed to thwart its ability to collect on its judgment obtained in the Netherlands Antilles. Allegations like those made here of fraudulent transactions and vexatious litigation strategies are very serious and warrant serious consideration on the merits in the appropriate forum. Making such weighty allegations does not, however, automatically render this the proper forum in which to seek discovery supporting those allegations. The only connection that the parties and proceedings have to this District is the fact that Mr. Ma resided here at the time the subpoenas were served. The necessary parties are litigating their dispute in the Netherlands, and the material at issue is within the jurisdictional reach of the District Court of Amsterdam. The discovery requested in this District is extremely broad in nature and targets documents located outside of the United States.

//
//
//
//
//
//

Having weighed the discretionary factors discussed above, the undersigned concludes that requiring Respondent to comply with the subpoenas is not appropriate in this case. Accordingly, the motion to compel discovery is **DENIED** and the subpoenas are hereby **QUASHED**. Petitioner's request for issuance of an order to show cause why Mr. Ma should not held in contempt is **DENIED**. The Clerk's Office is **INSTRUCTED** to administratively close this case.

IT IS SO ORDERED.

DATED: May 28, 2015

_____
NANCY J. KOPPE
United States Magistrate Judge